**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Phillip Rosenblum, ) | No. CV 1-08-0448-SMM |
|         Plaintiff, ) | **ORDER** |
| vs. ) | |
| Mule Creek State Prison Medical Staff, et ) al., ) | |
|         Defendants. ) | |

Before the Court are Plaintiff's (1) Request for Modification of Scheduling Order ("Request for Modification") (Doc. 57) and (2) Motion for Preliminary Injunction, which the Court construes as a Motion for Temporary Restraining Order (the "TRO Motion") (Doc. 67). Defendants have responded (Doc. 63) to Plaintiff's Request for Modification (Doc. 57), and Plaintiff has replied (Doc. 73). Defendants have also responded (Doc. 71) to Plaintiff's TRO Motion (Doc. 67), and Plaintiff has replied (Doc. 81). Therefore, the motions are fully briefed and ready for decision.

**BACKGROUND**

Plaintiff, who currently resides at West Valley Detention Center in Rancho Cucamonga, California (Doc. 81), alleges that doctors and medical supervisors at Mule Creek and Pleasant Valley state prisons were deliberately indifferent to his medical needs in violation of 42 U.S.C. § 1983 and the Eighth Amendment (Doc. 56 at 4-7). Specifically,

Plaintiff alleges that Defendants failed to diagnose and properly treat his heart/circulatory problems, which have symptoms including heart palpitations, irregular hearth rhythm, chest pain, protruding veins, numbness, and burning sensations. (Doc. 56 at 7-8.) Plaintiff alleges that though he has complained about his medical needs since 2003, he has not received proper testing or specialist referrals to treat his condition. (Doc. 56 at 8-9.) Plaintiff's primary reason for bringing suit (Doc. 44 at 1) is his inability to obtain a heart MRI, which was recommended once by Dr. Shyam Nair on September 26, 2008 (Doc. 56 at 22, Ex. G). Defendants assert that Dr. Nair's September 26, 2008 recommendation does not reflect either Dr. Nair's more recent evaluations or the opinions of other doctors who have evaluated Plaintiff. (Doc. 44 at 2.)

At the Court's request, Defendants submitted a report from the Receiver for the California State Prison Medical Care System, dated March 3, 2010, on Plaintiff's medical care (Doc. 42). This report includes a summary and chronology of Plaintiff's medical care, the reviewing physician's analysis and conclusions, and exhibits of relevant medical records. (Doc. 42.) The report shows that over several years, Plaintiff has received numerous evaluations from many physicians and specialists, including two cardiologists, and care providers in neurology, gastroenterology, and ENT. (Doc. 42 at 3.) Six primary care physicians have seen Plaintiff and have determined that he suffers from no serious heart disease. (Doc. 42 at 3.) Plaintiff has received a battery of evaluations, including overnight heart rate recordings, two event recorders, nuclear cardiac exercise stress tests, a brain MRI, evoked neurological potential studies, nerve conduction studies, and Chest Computerized Tomographic X-rays. (Doc. 42 at 3-4.) All of these test results were normal. (Doc. 42 at 4.) Plaintiff's Amended Complaint states that he continues to see a cardiologist and has been prescribed medication to regulate his heart/circulatory condition. (Doc. 56 at 11.) However, apparently no doctor since Dr. Nair has suggested that Plaintiff receive a heart MRI. (Doc. 42 at 2.) After reviewing this report (Doc. 42) and holding two status conferences (Docs. 40, 43), the Court found no substantial evidence that Plaintiff needed a heart MRI.

1    The Court on March 25, 2010 issued its Rule 16 Scheduling Order. (Doc. 44.) The
2 Court ordered that discovery undertaken in this case be limited because Plaintiff wished to
3 depose Dr. Nair and Defendants needed no additional time for discovery. (Doc. 44 at 4.) The
4 Court further ordered Defendants to file any summary judgment motion within 60 days, and
5 for Plaintiff to respond in 90 days, providing Plaintiff with ample opportunity to secure an
6 affidavit from Dr. Nair or depose him. (Doc. 44 at 5.) After Plaintiff sought leave to amend
7 his complaint (Doc. 45), the summary judgment deadlines were vacated (Doc. 47) upon
8 Defendants' motion (Doc. 46).

9    On July 21, 2010, Plaintiff filed his Amended Complaint (Doc. 56). The next day, on
10 July 22, 2010, Plaintiff filed his Request for Modification (Doc. 57), in which he argued his
11 entitlement to broader discovery regarding Defendants' alleged failure to provide medical
12 testing, treatment, and diagnosis. (Doc. 57 at 3-5.) On December 10, 2010, Plaintiff filed his
13 TRO Motion requesting an order granting him a heart MRI. (Doc. 67.)

## LEGAL STANDARDS

### I.    Temporary Restraining Order

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo among the parties pending a final decision on the merits of the action. See Fed. R. Civ. P. 65; Chalk v. U.S. Dist. Court, 840 F.2d 701, 705 (9th Cir. 1988); Regents of the Univ. of Cal. v. A.B.C., Inc., 747 F.2d 511, 515 (9th Cir. 1974). While Rule 65 of the Federal Rules of Civil Procedure establishes the procedural requirements for obtaining a temporary restraining order or preliminary injunction, the substantive requirements for injunctions are defined by applicable federal case law and statutes.

To qualify for a temporary restraining order, the moving party must demonstrate either (1) a probability of success on the merits and the possibility of immediate irreparable harm, or (2) that the lawsuit raises serious questions going to the merits and the balance of hardships tips sharply in the movant's favor. Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991). The two factors exist on a continuum such that "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the

1 district court that the public interest and balance of hardships tip in their favor." Sw. Voter
2 Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003); Oakland Tribune
3 Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1377 (9th Cir. 1985) (the two prongs "represent
4 two points on a sliding scale in which the required degree of irreparable harm increases as
5 the probability of success decreases.") As to harm, a plaintiff must show a "significant threat
6 of irreparable injury, irrespective of the magnitude of the injury." Dr. Seuss Enters., L.P. v.
7 Penguin Books USA, Inc., 109 F.3d 1394, 1397 n.1 (9th Cir. 1997).

8 **II.    Modification of Scheduling Order**

9       A party must demonstrate good cause to modify a scheduling order. Fed. R. Civ. P.
10 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent.")
11 This "'good cause' standard primarily considers the diligence of the party seeking the
12 amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). A
13 court can modify the scheduling order "if it cannot reasonably be met despite the diligence
14 of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's note. "Although
15 the existence or degree of prejudice to the party opposing the modification might supply
16 additional reasons to deny a motion, the focus of the inquiry is upon the moving party's
17 reasons for seeking modification. See Johnson, 975 F.2d at 609.

18 **DISCUSSION**

19 **I.    Plaintiff's TRO Motion**

20       Plaintiff argues that the Court should order him to receive an MRI because Plaintiff's:
21 (1) prior medical tests were "inconclusive, irrelevant, mismanaged, or did in fact show signs
22 of a serious condition simply going overlooked by careless medical staff"; (2) recent EKG
23 tests, in Plaintiff's opinion, reveal that a heart MRI is warranted; and (3) September 26, 2008
24 recommendation from Dr. Nair remains valid. (Doc. 67 at 2-4, 7-8.) Defendants assert that
25 Plaintiff's MRI request is unreasonable given substantial medical evidence indicating that
26 the test is unnecessary and inappropriate (Doc. 71 at 1-2). Defendants' Response includes
27 both: (1) a declaration from Kern Valley State Prison Chief Physician M. Spaeth, who states
28 that an MRI on Plaintiff is medically unnecessary and that Dr. Nair, as a private consultant,

1  is not "permitted to authorize or order treatment" and (2) a September 10, 2010 cardiology
2  consultation with Dr. Raj Gopal, which found Plaintiff had no heart problems requiring
3  immediate testing or care. (Doc. 71-1 at 2; Doc. 71, Ex. A.)

4  Based on the foregoing, Plaintiff fails to meet the standard for the issuance of a
5  temporary restraining order. See Gilder, 936 F.2d at 422. First, Plaintiff does not demonstrate
6  a probability of success on the merits. On the contrary, most medical evidence in this case
7  demonstrates that Plaintiff is unlikely to succeed in obtaining a heart MRI. The exception
8  being a qualified and somewhat equivocal recommendation from Dr. Nair issued September
9  26, 2008 (Doc. 56 at 22). Second, Plaintiff fails to demonstrate irreparable harm. See Gilder,
10 936 F.2d at 422. No doctor, including Dr. Nair (Doc. 56 at 22) has indicated that Plaintiff
11 will suffer irreparable harm if not given a heart MRI. Plaintiff's desire to receive a heart MRI
12 and his belief that he will suffer irreparable harm is not sufficient for the Court to grant a
13 TRO.

14 Further, Plaintiff's TRO Motion does not raises serious questions going to the merits,
15 nor does the balance of hardships tip sharply in his favor. Gilder, 936 F.2d at 422. The
16 medical evidence does not suggest that Plaintiff's health will be seriously affected if he does
17 not receive an MRI.  Further, medical records indicate that Plaintiff has been seen by many
18 medical professionals during the past five years, and has received testing, diagnosis, and
19 treatment from these professionals. (Doc. 44.) Given the extensive medical care Plaintiff has
20 received, the Court does not find that the balance of hardships tip in his favor or that
21 Plaintiff's lawsuit raises serious questions about Plaintiff's treatment.  Therefore, the Court
22 will deny Plaintiff's TRO Motion and any other injunctive relief.

23 **II.    Plaintiff's Request for Modification of Scheduling Order**

24 Plaintiff seeks broader discovery than what the Court provided for in its Rule 16
25 Scheduling Order, arguing that he needs to further investigate Defendants' failure to provide
26 him with adequate testing, treatment, and diagnosis. (Doc. 57 at 3.) Though it is often unclear
27 from Plaintiff's Request for Modification (Doc. 57) what discovery he wishes to conduct, it
28 appears that Plaintiff seeks information from Dr. Nair and medical records related to his

- 5 -

ongoing heart/circulatory problems. (Doc. 73 at 13.) Defendants argue that Plaintiff's Request for Modification fails to specify proposed modifications to the Court's March 25, 2010 Rule 16 Scheduling Order (Doc. 44). (Doc. 63 at 2.) Defendants also point out that, ten months after the Court issued its Rule 16 Scheduling Order authorizing Plaintiff to depose Dr. Nair, Plaintiff has failed to do so. (Doc. 63 at 2.)

Plaintiff must demonstrate good cause for the Court to modify its Rule 16 Scheduling Order (Doc. 44). Fed. R. Civ. P. 16(b)(4). In evaluating good cause, the Court must consider Plaintiff's diligence in meeting the requirements of the already existing scheduling order. Johnson, 975 F.2d at 609. Here, the Court has vacated the dispositive motions deadline in this case, so Plaintiff has not violated any deadline set forth in the Scheduling Order. (Doc. 44.) The focus of the good inquiry must therefore rely on Plaintiff's reasons for seeking modification. See Johnson, 975 F.2d at 609. Here, it is unclear why Plaintiff would need more than the five-month time frame set forth in the Court's Scheduling Order (Doc. 44) to accomplish his modest discovery goals. (Doc. 73 at 13.) Therefore, the Court will deny Plaintiff's Request for Modification (Doc. 57) because Plaintiff has failed to provide good cause. See Fed. R. Civ. P. 16.

In addition, the Court will reset the previously vacated (Doc. 47) dates for discovery and dispositive motions. Defendants have sixty (60) days from the date of this Order to file any summary judgment motion. Plaintiff will then have another ninety (90) days to respond.

## CONCLUSION

**IT IS HEREBY ORDERED DENYING** Plaintiff's Request for Modification of Scheduling Order (Doc. 57).

**IT IS FURTHER ORDERED DENYING** Plaintiff's TRO Motion (Doc. 67).

**IT IS FURTHER ORDERED** that Defendants shall file any summary judgment motion by Friday, April 8, 2011.

**IT IS FURTHER ORDERED** that Plaintiff shall file his response by Friday, July 8, 2011.

1   **IT IS FURTHER ORDERED** that Defendants shall file any reply by Friday, July 29, 2011.

DATED this 4th day of February, 2011.

_____
Stephen M. McNamee
United States District Judge